IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAFAYETTE ADAMS, *et al.*,  )
                            )
            Plaintiffs,     )
                            )
        v.                  )   CASE NO. 3:11-CV-125-WKW
                            )            [WO]
MACON COUNTY GREYHOUND       )
PARK, INC., d/b/a "VICTORYLAND" )
and "QUINCY'S 777," *et al.*, )
                            )
            Defendants.     )

## MEMORANDUM OPINION AND ORDER

In this lawsuit, 816 Plaintiffs bring a single claim under an Alabama statute that voids gambling contracts, seeking to recover money they lost playing electronic bingo machines at Victoryland and Quincy's 777 in Macon County, Alabama. Defendants are Macon County Greyhound Park, Inc., doing business as Victoryland and Quincy's 777; and the owners and operators of the electronic bingo machines, Multimedia Games, Inc., IGT, Cadillac Jack, Inc., Nova Gaming, LLC, and Bally Gaming, Inc. Plaintiffs originally filed this lawsuit in the Circuit Court of Macon County, Alabama, but it was removed here under the mass action, jurisdictional provision of the Class Action Fairness Act of 2005 ("CAFA"), *see* 28 U.S.C. §§ 1332(d)(11) and 1453.

Before the court is Plaintiffs' motion to remand for lack of subject matter jurisdiction, filed pursuant to 28 U.S.C. §§ 1332 and 1447(c). (Doc. # 33.) Plaintiffs

argue that this case falls within exceptions to CAFA and should be remanded to state court.  IGT, Multimedia Games, Inc., and Cadillac Jack, Inc., filed responses in opposition[1] (Docs. # 46-48), to which Plaintiffs filed a reply (Doc. # 49).  After careful consideration, the court finds that the motion to remand is due to be denied.

## I.  STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress.  *Quackenbush v. Allstate Ins*. Co., 517 U.S. 706, 716 (1996).  At the same time, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  Against that legal backdrop, in actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts in favor of remand, and place the burden of proving jurisdiction on the removing defendant.  *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-30 (11th Cir. 2006).  These principles were well established long before the enactment of CAFA in 1995, and the Eleventh Circuit has made clear that, notwithstanding CAFA's expansion of diversity jurisdiction over class and mass actions with interstate significance, these principles remain undisturbed.  *Id.*; *see also*

---

[1] Because these Defendants' arguments are substantially the same, for efficiency, citations to the briefs and arguments are to IGT's only.  Additionally, given the numerous briefs filed in support of and in opposition to the motion to remand, these filings are cited herein by using the docket numbers assigned to the documents in the court's electronic filing system.

*Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.").  CAFA contains, however, several narrow exceptions to federal jurisdiction for actions that "are truly local in nature."  *Evans*, 449 F.3d at 1163.  And the Eleventh Circuit has held that, "when a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, . . . the party seeking remand bears the burden of proof with regard to that exception."  *Id.* at 1164.

## II.  BACKGROUND

Only the facts material to resolving the motion to remand are set out here.[2]  At all times pertinent to this litigation, Defendant Macon County Greyhound Park ("MCGP") offered pay-to-play electronic bingo machines to the public at its facility in Macon County, Alabama, under the names Victoryland and Quincy's 777.[3]  (Am. Compl. ¶¶ 2, 17, 18.)  MCGP is an Alabama corporation, which "is owned, in whole

---

[2] If the facts sound familiar, that is because two similar actions were filed in this court and are pending before the undersigned.  *See Adell v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv122 (M.D. Ala. filed Feb. 16, 2010); *Bussey v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv191 (M.D. Ala. filed March 4, 2010).  In *Adell* and *Bussey*, as here, the plaintiffs allege that they lost money playing illegal electronic bingo machines at Victoryland, and sue to recover those losses under § 8-1-150 of the Alabama Code.  *Adell*, consisting of 853 plaintiffs, was filed as a proposed "mass action," while *Bussey* was filed as a proposed class action.  Defendants in this lawsuit also are sued in *Adell* and *Bussey*.

[3] For ease of reference, Victoryland and Quincy's 777 are referred to together as "Victoryland."

3

or in part," by Milton McGregor ("McGregor").  (Am. Compl. ¶ 2.)  The remaining

Defendants – Multimedia Games, Inc., IGT, Cadillac Jack, Inc., Nova Gaming, LLC,

and Bally Gaming, Inc. – are alleged to "own[ ] and operate[ ]" the subject electronic

bingo machines and are deemed citizens of states other than Alabama, to include

Texas, Nevada, Georgia and South Carolina.[4]  (Am. Compl. ¶¶ 3-7.)

The 816 Plaintiffs spent "millions of dollars" playing electronic bingo

machines at Victoryland during the six-month period preceding the filing of the

Complaint.  (Am. Compl. ¶¶ 8, 32.)  All but two Plaintiffs are Alabama citizens,[5] and

Plaintiffs allege that "each of their claims individually and aggregately exceed [sic]

$10,000."  (Am. Compl. ¶¶ 1, 10.)

The alleged illegality of Victoryland's electronic bingo machines under

Alabama law is at the core of this action.[6]   Electronic bingo commenced at

---

[4] These Defendants are occasionally referred to collectively as the electronic bingo machine suppliers.

[5] The Amended Complaint alleges that all Plaintiffs are "resident citizens of Alabama." (Am. Compl. ¶ 2.)  In their motion to remand, however, Plaintiffs acknowledge that two Plaintiffs are not citizens of Alabama.  (Doc. # 33, at 3.)

[6] *See, e.g.*, Am. Compl. ¶¶ 3-7 (Defendants "engage in the operation of illegal bingo games" and "operate[ ] certain illegal bingo devices."); Am. Compl. ¶ 19 (The "machines operated" by Defendants "are illegal electronic bingo devices."); Am. Compl. ¶ 27 (Defendants' electronic bingo machines are "in fact, 'slot machines' . . . which violate the criminal provisions of Alabama law."); Am. Compl. ¶ 29 (Defendants used "illegal machines and devices."); Am. Compl. ¶ 33 (Defendants' "electronic gaming operation" is an "illegal gambling operation under Alabama constitutional, statutory and common law.").

Victoryland after the ratification in June 2004 of Amendment No. 744 to the Alabama Constitution.  (Am. Compl. ¶ 12); *see also* Ala. Const. 1901 amend. No. 744.  This constitutional amendment permits "[t]he operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes."  Ala. Const. 1901 amend. No. 744.  Plaintiffs dispute Defendants' contention that the electronic bingo operation at Victoryland "was . . . within the parameters of local Amendment 744," contending that Amendment No. 744 does not "authorize the playing of 'bingo' through or with electronic devices as have been used" by Defendants at Victoryland.  (Am. Compl. ¶ 13.)  Because Victoryland's electronic bingo machines allegedly run afoul of Amendment No. 744, Plaintiffs aver that the machines "are, in fact, 'slot machines' . . . which violate the criminal provisions of Alabama law, including but not limited to, §§ 13(a)-12-20(10) and 13(a)-12-27." (Am. Compl. ¶ 28.)  Plaintiffs further allege that, during the same time frame that they patronized Victoryland, the electronic bingo machines were rigged, from time to time, to ensure wins exceeding $1.6 million collectively for a former city of Birmingham mayor.  (Am. Compl. ¶¶ 35-43.)

Seeking to recover gambling losses they incurred playing Defendants' alleged illegal electronic bingo machines, Plaintiffs originally filed this lawsuit in the Circuit Court of Macon County, Alabama, against MCGP.  While the action was pending in

5

state court, Plaintiffs filed an Amended Complaint, adding as Defendants Multimedia Games, Inc., IGT, Cadillac Jack, Inc., Nova Gaming, LLC, and Bally Gaming, Inc., and also adding several new Plaintiffs.  The governing Amended Complaint contains one count.  In that count, Plaintiffs allege that they "entered into wagers" with Defendants, that those wagers were founded upon illegal gambling contracts and that, therefore, the contracts are void, pursuant to Alabama Code § 8-1-150.  (Am. Compl. ¶ 51.)  Plaintiffs "seek the recovery of monies paid to" Defendants "for wagers on improper and illegal bingo games conducted by [them] at Victoryland." (Am. Compl. ¶ 52; *see also* Am. Compl., *ad damnum* clause ("demand[ing] judgment against the Defendants for the recovery of the monies paid on all electronic bingo games played by the Plaintiffs plus interest and the costs of this matter").)

Relying on 28 U.S.C. §§ 1332(d)(11) (governing mass action removals), 1453 (governing class action removals),[7] and 1446(b) (governing removal procedures), IGT removed this action to the United States District Court for the Middle District of Alabama within thirty days of being served with a summons and a copy of the Amended Complaint.  In its notice of removal, IGT asserts that the district court has jurisdiction over the case as a mass action because the minimal diversity requirements

---

[7] CAFA eliminated the rule of unanimity in removal.  *See* 28 U.S.C. § 1453(b) (providing that a class action "may be removed by any defendant without the consent of all defendants").

exist, there are more than 100 plaintiffs, the monetary claims exceed $5,000,000 in the aggregate, and the claims involve common questions of law or fact.  (Not. of Removal ¶¶ 4-12 (Doc. # 2).)  On March 11, 2011, Plaintiffs responded by filing the instant motion to remand.

### III.  DISCUSSION

Plaintiffs present four grounds in support of their motion to remand.  First, they argue that the amount in controversy requirement for removal of a mass action under CAFA is not satisfied.  Second, Plaintiffs contend that this lawsuit does not fit within CAFA's definition of a "mass action," but rather falls into the statutory exception to that definition found in 28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Third, they assert that, even if this is a "mass action," the "local controversy" exceptions in 28 U.S.C. § 1332(d)(4)(A) & (B) require remand.  Fourth, Plaintiffs contend that, alternatively, the court should, in its discretion, decline jurisdiction under 28 U.S.C. § 1332(d)(3). IGT opposes each basis.

### A.    Amount in Controversy:  28 U.S.C. § 1332(d)(2)

Section 1332(d)(2) vests district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" the parties satisfy minimal diversity.  Section 1332(d) further provides that the $5,000,000 is calculated

7

by aggregating the claims of the individual mass action members, *see* 28 U.S.C. § 1332(d)(6), and that a mass action is a "class action" subject to removal.[8]  *See* § 1332(d)(11)(A); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1205 (11th Cir. 2007) (Section 1332(d)(11)(A) "incorporated for mass actions the jurisdictional grant of § 1332(d)(2).").

In their notice of removal, IGT asserts that the aggregate $5,000,000 jurisdictional minimum is satisfied from the face of the Amended Complaint.  For its calculation, IGT points to the fact that there are 816 named Plaintiffs (Am. Compl. ¶ 10), and that Plaintiffs "assert that each of their claims individually and aggregately exceed[s] $10,000 exclusive of interest and costs."  (Am. Comp. ¶ 10.)  Defendants argue that, based upon these allegations, the Amended Complaint specifically alleges that there are 816 Plaintiffs who ascribe a value of more than $10,000 to their individual claims.  Defendants assert that by multiplying 816 (Plaintiffs) and $10,000, the minimum amount in controversy unambiguously is more than $8,160,000, "an amount well in excess of the $5,000,000 jurisdictional threshold."  (Doc. # 46, at 11; *see also* Not. of Removal ¶ 5 (By alleging at least $10,000 in damages for each named

---

[8] The other requirements that must be met for an action to be removable as a mass action under CAFA are a "'diversity requirement of minimal diversity,'" a "'numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs,'" and a "'commonality requirement that the plaintiffs' claims involve common questions of law or fact.'"  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1202-03 (11th Cir. 2007)).  These requirements are not challenged.

Plaintiff, "the face of the Complaint reflects a minimum aggregate amount in controversy of $8,160,816.").)

Urging remand, Plaintiffs fault IGT's reliance on ¶ 10 of the Amended Complaint.  Relying upon *Lowery*, Plaintiffs argue that paragraph 10 is neither specific nor unambiguous as to the amount in controversy.  (Doc. # 33, at 6.) Plaintiffs equate their Amended Complaint with that in *Lowery*, arguing that they have pleaded only an amount sufficient to establish the jurisdiction of the Alabama Circuit Courts.  This "jurisdictional amount," according to Plaintiffs, is "not a statement for relief," or a "comment on the value of the case, or specific prayer for relief."  (Doc. # 33, at 6-7.)  Plaintiffs argue, in essence, that the value assigned to their claims in the Amended Complaint's jurisdictional section is insufficient to establish the amount in controversy where, as here, the prayer for relief contains an unspecified demand for damages.

As framed by the parties' arguments, the issue is whether IGT has demonstrated the aggregate $5,000,000 jurisdictional minimum by relying on paragraph 10 of the Amended Complaint, which provides: "Plaintiffs assert that each of their claims individually and aggregately exceed[s] $10,000, exclusive of interest and costs."  (Am. Compl. ¶ 10.)  IGT clearly has.

In *Lowery*, the Eleventh Circuit explained that, "[i]f the jurisdictional amount is either stated clearly on the face of the [removing] documents before the court, or readily deducible from them, then the court has jurisdiction."[9]  483 F.3d at 1211.  It is true that the complaint in *Lowery*, as here, did not contain an "*ad damnum* clause indicating the amount of damages sought."  *Id.* at 1219.  However, in *Lowery*, there was no "other concrete information about the value of plaintiffs['] claims," *id.*, and that is where this case parts ways with *Lowery*.  The operative complaint in *Lowery* alleged that the plaintiffs sought "compensatory and punitive damages in an amount in excess of the [Alabama circuit court's] minimum jurisdictional limit," which at the time was $3,000.  *Id.* at 1188 & n.6.  The allegation in *Lowery* established merely that collectively the claims of the more than 400 plaintiffs exceeded $3,000; there was no allegation placing a value on each individual plaintiff's claims, as here, from which a total value could be easily calculated.  *Lowery*'s conclusion – *i.e.*, that there was "no unambiguous statement on the face of the amended complaint that would be sufficient to establish that plaintiffs' claims potentially exceed $5,000,000 in aggregate" – has no applicability here.  *Id.* at 1219.

_____

[9] Because the court's review need not extend beyond the face of the Amended Complaint, Plaintiffs' motion to remand does not bring to issue the scope of evidence that can be considered when, as here, remand is sought within thirty days of a removal based upon an amended pleading.  *See* 28 U.S.C. § 1446(b)(2); *Lowery*, 483 F.3d at 1211-15.

In this case, ¶ 10 of the Amended Complaint provides "concrete information about the value of [P]laintiffs['] claims." *Lowery*, 483 F.3d at 1219.  There is no guesswork required to ascertain the number of Plaintiffs in this mass action:  That number is 816 based upon a simple count of each Plaintiff named in the Amended Complaint.  *Cf. Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978) (holding that, where a complaint did not specify the number of plaintiffs in a class action, neither the defendants nor the court could speculate as to the size of the class for purposes of determining if the minimum amount in controversy was met).[10]  In ¶ 10, Plaintiffs also clearly attach a value to their individual claims, *i.e.*, "each of their claims *individually* . . . exceed[s] $10,000, exclusive of interest and costs."  (Am. Compl. ¶ 10.)  Based on these clear and unambiguous numbers, one then only has to use an uncomplicated, mathematical equation to compute the minimum aggregate value of Plaintiffs' claims:  $816 \times \$10,000 = \$8,160,000$.  *See Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.7 (11th Cir. 2010) (using "simple arithmetic" to figure the size of the class based upon the amount of individual damages).

In sum, the court finds that the face of the Amended Complaint reflects an aggregate amount in controversy of more than $5,000,000, and that IGT has met its

---

[10] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.  *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

removal burden.[11]   The issue turns, thus, to whether this action falls within an exception to CAFA jurisdiction.

## B.   Mass Action Exception:  § 1332(d)(11)(B)(ii)(I)

This case was removed as a mass action.  A "mass action" is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ."  § 1332(d)(11)(B)(i).  There are several exceptions to the "mass action" definition, and Plaintiffs argue that this case falls within the exception set forth in § 1332(d)(11)(B)(ii)(I):  A "mass action" does not include a civil action in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State."  § 1332(d)(11)(B)(ii)(I).  Because this is an exception to CAFA's mass action jurisdictional provisions, Plaintiffs have the burden of proof. *See Evans*, 449 F.3d at 1164.

_____

[11] Plaintiffs also "note[ ] that [CAFA] removes from the jurisdiction of the district courts individual actions in which the value of the plaintiff's claims do not exceed $75,000."  (Doc. # 33, at 7.)  They make no argument or submit authority that the $75,000 provision, *see* 28 U.S.C. § 1332(d)(11)(B)(i), establishes an additional amount-in-controversy requirement for mass action removals, and *Lowery* dictates otherwise. *See Lowery*, 483 F.3d at 1205 ("[T]he $75,000 provision was not intended to bar district courts from asserting jurisdiction over the entire case if each individual plaintiff's claims do not exceed $75,000.").  Because the issue is whether removal jurisdiction is proper over the action *as a whole*, Plaintiffs' argument for remand of individual plaintiffs whose claims do not exceed $75,000 warrants no further discussion at this stage.

The issue is whether Plaintiffs' claims arise from "an event or occurrence" within the meaning of § 1332(d)(11)(B)(ii)(I). "As in all statutory construction cases, [the Court] begin[s] with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "Where the language of a statute is unambiguous, . . . [the court] need not, and ought not, consider legislative history." *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009). However, "'[i]n the absence of any plain meaning of the statutory language, [a court looks] to the legislative history of the statute to determine whether Congress provided any guidance concerning its intent.'" *World Fuel Corp. v. Geithner*, 568 F.3d 1345, 1349 (11th Cir. 2009) (quoting *United States v. Fields*, 500 F.3d 1327, 1330 (11th Cir. 2007)).

CAFA does not define the phrase "an event or occurrence," and the parties do not cite any binding authority defining the phrase. There is, however, legislative history that provides:

> The first exception [§ 1332(d)(11)(B)(ii)(I)] would apply only to a truly local single event with no substantial interstate effects. The purpose of this exception was to allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local, even though there are some out-of-state defendants. By contrast, this exception would not apply to a product liability or insurance case. The sale of a product to different people does not qualify as an event. And the alleged injuries in such a case would be

13

> spread out over more than one state (or contiguous states) – even if all
> the plaintiffs in the particular case come from one state.

S. Rep. No. 109-14, at 47 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, at 44.

Emphasizing the statute's singular use of "event" and "occurrence," IGT adopts the position espoused in the legislative history that the phrase "an event or occurrence" refers only to a singular event, like a chemical spill. IGT argues that, because Plaintiffs allege that they played electronic bingo machines at Victoryland on "numerous occasions" for a span of at least a year, the individual claims of 816 Plaintiffs "do not arise out of a single event or occurrence," as contemplated by § 1332(d)(11)(B)(ii)(I). (Doc. # 48, at 7.) Moreover, as support for its argument, IGT relies on three district court decisions, discussed later in this opinion: (1) *Galstaldi v. Sunvest Cmtys. USA, LLC*, 256 F.R.D. 673 (S.D. Fla. 2009); (2) *Cooper v. R.J. Reynolds Tobacco Corp.*, 586 F. Supp. 2d 1312, 1316 (M.D. Fla. 2008); and (3) *Aburto v. Midland Credit Mgmt., Inc.*, No. 3:08cv1473, 2009 WL 2252518 (N.D. Tex. July 27, 2009).

Plaintiffs disagree, contending that the phrase "an event or occurrence" is not limited to a single, discrete incident, but rather includes harms that take place at a single location. (Doc. # 49, at 2-3.) Plaintiffs argue that the statutory focus should be on the similarity of the alleged harms – *i.e.*, "the loss of money in the playing of

14

illegal electronic bingo" at the same casino.  (Doc. # 49, at 3.)  Because all of the alleged harms occurred in one specific location in Alabama, Plaintiffs contend that this action falls outside the definition of a CAFA mass action.  (Doc. # 49, at 3.) Plaintiffs rely upon *Carr v. Arvin Industries*, No. 05-J-1283-J (N.D. Ala. July 20, 2005) (Order granting motion to remand).[12]  Brief discussion of the cases relied upon by the parties is helpful to the analysis.

*Carr* was before the court on a motion to remand.  It involved a suit by employees of a manufacturing plant, who alleged that they were injured by a toxic chemical used at the plant in the manufacturing process of automotive mufflers and that the failure of their employer to provide them protective clothing denied them a safe work place.  Remanding based upon § 1332(d)(11)(B)(ii)(I), the court found that because the plaintiffs' "injuries occurred at one specific location in Alabama," the facts were more similar to an "'environmental tort such as a chemical spill,'" rather than a "'product liability . . . case' where the 'alleged injuries . . . would be spread out over more than one state . . . .'"  *Id.* at 18 (quoting S. Rep. No. 109-14).

Motions to remand were denied in the decisions relied upon by IGT.  In *Cooper*, Florida citizens, previously members of a state class action that had been decertified, sought recovery in state court for illnesses allegedly caused from their

---

[12] There is no westlaw citation for this opinion.

addiction to cigarettes.  *See* 586 F. Supp. 2d at 1314.  After their cases were removed under CAFA, the court rejected the plaintiffs' argument that § 1332(d)(11)(B)(ii)(I) excepted their cases from the "mass action" definition.  The court found that the plaintiffs' injuries did not qualify as "single events or occurrences."  *Id.* at 1316.  The court reasoned:

> According to the CAFA legislative history, this exception keeps a case based on a single event or occurrence, like a chemical spill or a building collapse, in state court despite otherwise meeting the definition of a removable mass action.  *See* S. Rep. 109-14, at 47 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 44.  This exception does not apply to products liability cases like this one because "[t]he sale of a product to different people does not qualify as an event."  *Id.*

*Id.* at 1316-17 (internal footnote omitted).

*Galstaldi*, removed to federal court under CAFA, involved an alleged fraudulent scheme in which 177 plaintiffs paid on average $300,000 for a pre-converted condominium based upon promises that they would one day be residents of a luxurious Orlando, Florida resort.  256 F.R.D. at 674.  The Florida-based defendants duped the plaintiffs and stole their money, leaving them with "virtually worthless, dilapidated, bug- and rodent-infested apartments."  *Id.*  The plaintiffs claimed that their case was excepted from the "mass action" definition by § 1332(d)(11)(B)(ii)(I).  The court disagreed based upon the "fairly clear" language of the statutory exception limiting its applicability to "'an event or occurrence' in the

singular." *Id.* at 677.  The court also found that the legislative history buttressed its statutory reading.  *Id.*

In *Aburto*, the plaintiffs originally sued in state court for damages "stemming from void judgments taken against them and any resulting collection activity to collect on those judgments in Texas."  2009 WL 2252518, at *4.  The defendants removed the action to federal court as a CAFA mass action, and the plaintiffs unsuccessfully argued that remand was required because the action fell within § 1332(d)(11)(B)(ii)(I).  *Id.*  The court in *Aburto*, as in *Cooper* and *Galstaldi*, relied upon the fact that the statute phrased "an event or occurrence" in the singular.  *Id.* The court acknowledged that the plaintiffs' claims shared similar facts, but it agreed with *Galstaldi* that "[t]he statutory language is clear – an 'event or occurrence' which can take an action outside the definition of a 'mass action' is a singular event or occurrence."  *Id.*  It further opined that, "[e]ven if the language itself was not clear, the legislative history evidences this was the intended effect."  *Id.*  Because the action involved individual lawsuits filed in multiple state courts by different lawyers and firms, the *Aburto* court could not "conclude that these actions were 'an event or occurrence' within the meaning of section 1332(d)(11)(B)(ii)(I)."  *Id.*

Two things are as Plaintiffs say.  First, as in *Carr*, Plaintiffs no doubt suffered their injuries at a single location:  a gaming facility in Macon County, Alabama,

called Victoryland.  Second, the consequences of Plaintiffs' actions are the same: Money was lost betting on electronic bingo machines at Victoryland. Notwithstanding, the similarity of location and consequences, the claims in this action are not the type of claims that constitute "an event or occurrence," within the meaning of § 1332(d)(11)(B)(ii)(I).  As in *Cooper*, *Galstaldi* and *Aburto*, the court cannot ignore the singular usage of "event" and the singular usage of "occurrence."  This action is more readily described as involving a series of separate events or occurrences, rather than a single event or occurrence.  Here, there is no singular contract from which Plaintiffs' injuries allegedly arose, but instead there are, at a minimum, 861 contracts or "events" or "occurrences," each one wholly separate from every other one.  At Victoryland, each Plaintiff engaged in separate and distinct wagers through his or her individual play of electronic bingo machines.  (*See* Am. Compl. ¶¶ 30, 32, 36, 49.)  It would stretch the limits of the statutory phrase, "an event or occurrence," to include within its parameters Defendants' formation of separate contracts with different plaintiffs.

Even if this court were to conclude that the statutory language required amplification from the legislative history, the conclusion would be the same.  There is no tension between the statutory phrase – "an event or occurrence" – and the legislative history.  This action does not involve injuries flowing from the adverse

effects of a chemical spill or a discrete, catastrophic, environmental event, as contemplated in the Senate Report for inclusion in § 1332(d)(11)(B)(ii)(I).  *See* S. Rep. No. 109-14, at 47 (providing that § 1332(d)(11)(B)(ii)(I) is intended "to allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local . . . .").  Nor is a mass tort at issue. This action is more akin to an "insurance case," which the Senate Report cites as an example of a case excluded from § 1332(d)(11)(B)(ii)(I).  S. Rep. No. 109-14, at 47; *see also Lafalier v. Cinnabar Serv. Co.*, No. 10cv5, 2010 WL 1486900, at *4 (N.D. Okla. April 13, 2010) (finding that plaintiffs, who alleged that insurance companies impermissibly denied or reduced insurance payments after a tornado hit a Superfund site and that the Superfund trust improperly devalued plaintiffs' residences by deducting tornado-related insurance settlements from the buyout prices, had not brought claims "aris[ing] out of a single event or occurrence," so as to be excepted from the definition of a CAFA "mass action"), *aff'd*, 391 F. App'x 732 (10th Cir. 2010).  Here, not unlike the scenario in *Lafalier*, where each plaintiff challenged the insurance company's rejection of his or her separate insurance claims, each of the 861 Plaintiffs brings claims based on individual gambling contracts he or she entered into with one or more Defendants.  In other words, Plaintiffs predicate their claims on separate contracts formed with Defendants when they paid to play electronic bingo

19

machines at Victoryland.  Each play and the resulting loss of money form a separate event for which recovery of money is sought.

In sum, this action is not excluded from the definition of a "mass action" under § 1332(d)(11)(B)(ii)(I).  Now at issue are some of the exceptions to CAFA jurisdiction.

## C.   Mandatory Local Controversy Exception:  28 U.S.C. § 1332(d)(4)

"[T]he local controversy exception can be satisfied in either of two ways, as provided for respectively in 28 U.S.C. § 1332(d)(4)(A) or (B)."  *Evans*, 449 F.3d at 1163 n.2.  If the exception's requirements are met under either subsection, remand is mandatory. Plaintiffs have relinquished reliance on § 1332(d)(4)(A), in favor of § 1332(d)(4)(B).

### 1.   *§ 1332(d)(4)(A)*

The local controversy exception in § 1332(d)(4)(A) applies only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants." § 1332(d)(4)(A)(ii).  In their reply brief, Plaintiffs "amend their motion to remand to concede" that this exception "does not precisely apply to this action" (Doc. # 49, at 4), given the March 4, 2010 filing of the *Bussey* class action.  *Bussey* involves the same state law claim against the same Defendants as in this action, *see supra* note 2.

20

Based upon that concession, the court finds that Plaintiffs have not satisfied their burden of demonstrating this exception's applicability.

### 2.    § 1132(d)(4)(B)

Under § 1332(d)(4)(B), "[a] district court shall decline to exercise jurisdiction [where] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  The citizenship of the parties is not in dispute.  What is in

dispute is whether there is more than one primary defendant.[13]  Plaintiffs contend that

MCGP, which undisputedly is the only Defendant with Alabama citizenship, is the

sole primary defendant.  That is so, Plaintiffs argue, because MCGP was the facility

that housed the electronic bingo machines, and it was "the facilitator and host of all

of the Plaintiffs' losses, without which no Plaintiff would have had the ability or

---

[13] Defendants posit that because the statute refers to "primary defendants" in the plural form, § 1332(d)(4)(B) "clearly contemplates that more than one defendant may be considered a primary defendant."  (Doc. # 46, at 7.)  The consensus among the courts is that the plural use of "defendants" means that all primary defendants must be citizens of the state in which the action was originally filed, here Alabama.  *See, e.g.*, *In re Hannaford Bros. Co.*, 564 F.3d 75, 80 (1st Cir. 2009) (§ 1332(d)(4)(B) "encompass[es] only those suits where . . . all of the primary defendants are citizens of the same state.  Suits involving a primary defendant who is not a citizen of the forum state cannot qualify for the exception."); *Rader v. Teva Parental Medicines, Inc.*, No. 2:10cv818, 2010 WL 3463652, at *2 (D. Nev. Aug. 27, 2010) ("Courts have agreed, that the term primary generally means all defendants, or those who are the target of the lawsuit."); *Corsino v. Perkins*, No. 2:10cv818, 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010) (Many courts "agree that the term 'the primary defendants' means that all primary defendants must be citizens of the state concerned." (collecting cases)); *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 296 (D. Mass. 2009) ("Courts generally agree that the term 'the primary defendants' means that all primary defendants must be citizens of the state concerned." (collecting cases)); *Cooper*, 586 F. Supp. 2d at 1318 (§ 1332(d)(4)(B) "fails here because the 'primary defendants' are not all citizens of the [state in which the action was originally filed]."); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) ("'[T]he plain language of [§ 1332(d)(4)(B)] requires remand only when *all* of the primary defendants are residents of the same state in which the action was originally filed'" (quoting *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006))); *Brook v. UnitedHealth Group Inc.*, No. 06cv12954, 2007 WL 2827808, at *6 (S.D.N.Y. Sept. 27, 2007) ("The plain language of the home state controversy section demonstrates that Congress intended that the State citizen requirement pertain to all primary defendants." (citing *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (interpreting § 1332(d)(5)(A)'s  phrase "primary defendants" to "require[ ] that all primary defendants be states"))).

The parties have not cited any contrary authority.  To the extent that Plaintiffs' opening brief suggests that the phrase "primary defendants" should be interpreted to mean that "at least one" primary Defendant is a citizen of Alabama (Doc. # 33, at 4), Plaintiffs' reply brief abandons that position.  (*See* Doc. # 49, at 6 (arguing in the reply brief that "the one significant defendant, MCGP[,] is an Alabama citizen").)

occasion to lose any money to the other Defendants."  (Doc. # 49, at 5; *see also* Doc. # 33, at 3 ("*The primary defendant* in this action is [MCGP]." (emphasis in original).)  Defendants contend that the electronic bingo machine suppliers also are primary Defendants.  (Doc. # 46, at 8.)

CAFA does not define "primary defendants," and the Eleventh Circuit also has not interpreted this phrase in a published opinion.  However, Plaintiffs and Defendants cite *Evans*'s discussion of § 1332(d)(4)(A)'s "significant relief" requirement as support for their positions.[14]  449 F.3d at 1166-67.  In *Evans*, the Eleventh Circuit noted that at least two courts had defined "significant relief" as "relief sought against [an in-state] defendant [that] is a significant portion of the entire relief sought by the class."  *Id.* at 1167 (citing *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 WL 468820 (W.D. La. Feb. 27, 2006), and *Kearns v. Ford Motor Co.*, No. 05-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005)).  *Evans* cited with approval the rationale in *Robinson*:  "[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison

---

[14] One of the requirements under § 1332(d)(4)(A) is that at least one defendant must be a defendant "from whom significant relief is sought by members of the plaintiff class." § 1332(d)(4)(A)(i)(II)(aa).

23

of the relief sought between all defendants and each defendant's ability to pay a potential judgment." 449 F.3d at 1167 (quoting *Robinson*, 2006 WL 468820, at *3).

Although not discussed by the parties, other district courts have devised a number of tests to define "primary defendants." As observed in *Cooper*, courts have found that "'a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously . . . ; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action.'" 586 F. Supp. 2d at 1318 (quoting *Brook v. UnitedHealth Group Inc.*, No. 06cv12954, 2007 WL 2827808, at *5 (S.D.N.Y. Sept. 27, 2007) (collecting cases)).[15]

Here, the court need not resolve whether *Evans*'s definition of "significant relief" is suitable for determining whether a defendant is "primary." Nor does the court need to grapple with the varying tests defined by other courts for deciding who is and who is not a primary defendant. On the facts of this case, all Defendants are primary defendants no matter the test employed.

---

[15] *See also* S. Rep. No. 109-14, at 43 ("For purposes of class actions that are subject to subsections 1332(d)(3) and (d)(5)(A), the Committee intends that 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the lawsuit – *i.e.*, the defendants that would be expected to incur most of the loss if liability is found. Thus, the term 'primary defendants' should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).").

The Amended Complaint makes no distinction between MCGP and the electronic bingo machine suppliers for purposes of assessing liability or damages. No Defendant is alleged to be exposed to any greater liability than another; no Defendant is alleged to have caused any greater injury than another; and no Defendant is alleged to be any more culpable than another. Rather, it is alleged that Plaintiffs entered into wagers with each and every Defendant alike, and that the potential liability of all Defendants is direct as opposed to vicarious. Moreover, Plaintiffs seek recovery of lost wagers from each and every Defendant, and the recovery is sought "jointly and severally" from all Defendants. (Am. Compl. ¶¶ 8, 51-52.)

In their brief, Plaintiffs try to focus the spotlight exclusively on MCGP so as to argue that MCGP is the only primary defendant. However, the face of the Amended Complaint simply provides no facts to differentiate between any particular Defendant, much less between MCGP and the electronic bingo machine suppliers. To the contrary, the Amended Complaint disperses the light equally on all Defendants, so as to bring the electronic bingo machine suppliers into the primary defendant spotlight alongside MCGP.

Accordingly, all Defendants qualify as "primary defendants" under § 1332(d)(4)(B). Because the "primary defendants" are not all citizens of the state

of Alabama, Plaintiffs cannot establish that the § 1332(d)(4)(B) local controversy exception applies.

## D.  __Discretionary Exception__:  __28 U.S.C. § 1332(d)(3)__

Plaintiffs also argue that this action should be remanded under a discretionary exception to CAFA jurisdiction. *See* § 1332(d)(3). Section 1332(d)(3) provides that "[a] district court may, in the interests of justice and looking at the totality of circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed," provided that the six statutorily prescribed factors set forth in § 1332(d)(3)(A)-(F) justify declination.

IGT argues that this exception is inapplicable because more than two-thirds of Plaintiffs are citizens of Alabama.  Plaintiffs concede that "on its face," § 1332(d)(3) "does not apply . . . because all but two Plaintiffs, rather than fewer than two-thirds," are Alabama citizens.  (Doc. # 33, at 5; *see also* Am. Compl. ¶ 1.)  Plaintiffs argue, however, that strict compliance with this requirement would contravene the intent of § 1332(d)(3) to exclude from CAFA's jurisdiction "actions in which national interests are not a concern."  (Doc. # 33, at 5.)

26

As stated earlier in this opinion, when interpreting a statute, a court "look[s] first to the statute's plain meaning." *Lowery*, 483 F.3d at 1199. "[I]f the statutory language is facially unambiguous, [its] inquiry comes to an end." *Id.*; *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (internal citations omitted)). Strict adherence to this rule yields only where the "result of adhering to the plain meaning rule 'is not just unwise but is clearly absurd.'" *United States v. Nix*, 438 F.3d 1284, 1286 (11th Cir. 2006) (quoting *C.B.S., Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001)). However, this narrow exception is rarely invoked "because if it were used indiscriminately, 'clearly expressed legislative decisions would be subject to the policy predilections of judges.'" *Id.* (quoting *C.B.S., Inc.*, 245 F.3d at 1228).

Here, the analysis begins and ends with § 1332(d)(3)'s plain language, which could not be plainer. This statutory exception contains an express numerical limitation; it is limited to a mass action "in which greater than one-third but less than two-thirds" of the plaintiffs are citizens of the forum state. § 1332(d)(3). The statute contains no qualifiers – no "if," "or" or "unless" – to this size restriction. If Congress had intended the size limitation to be advisory only, it could have said so, but it did

27

not.  It also can be presumed that Congress knew what it meant when it chose its fractions in drafting § 1332(d)(3).  For instance, in a neighboring subsection, Congress gave precise instructions pertaining to the court's exercise of jurisdiction over mass actions where "greater than two-thirds" of the plaintiffs are citizens of the state where the action was commenced.  *See* § 1332(d)(4).  Yet, in § 1332(d)(3), the "greater than two thirds" language is absent, in favor of a sliding scale that begins with one-third and ends with two-thirds.

Plaintiffs have not demonstrated that there is an absurd result in concluding that § 1332(d)(3)'s numerical limitation means what it says.  Their congressional intent argument is not persuasive, in light of the above discussion and also given that the "language and structure of CAFA itself indicates that Congress contemplated broad federal court jurisdiction, with only narrow exceptions."  *Evans*, 449 F.3d at 1164 (internal citation omitted).  The court will not write out of § 1332(d)(3) the clear words written by Congress.  Because the number of Plaintiffs who are citizens of Alabama exceeds two-thirds, the court has no authority to decline to exercise jurisdiction under § 1332(d)(3).

## IV.  CONCLUSION

The removing defendant, IGT, has met its burden of proving federal jurisdiction under CAFA, but Plaintiffs have not met their burden of proving an

exception to CAFA jurisdiction.  It is, therefore, ORDERED that Plaintiffs' motion to remand (Doc. # 33) is DENIED.

DONE this 3rd day of November, 2011.

/s/ W.  Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE