IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAFAYETTE ADAMS, *et al.*,        ) | |
|                                                             ) | |
|           Plaintiffs,                               ) | |
|                                                             ) | |
|      v.                                                  ) | CASE NO. 3:11-CV-125-WKW |
|                                                             ) | [WO] |
| MACON COUNTY GREYHOUND ) | |
| PARK, INC., d/b/a "VICTORYLAND" ) | |
| and "QUINCY'S 777," *et al.*,           ) | |
|                                                             ) | |
|           Defendants.                            ) | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit, 816 Plaintiffs bring a single claim under an Alabama statute that voids gambling contracts, seeking to recover money they lost playing electronic bingo machines at Victoryland and Quincy's 777 in Macon County, Alabama. Defendants are Macon County Greyhound Park, Inc., doing business as Victoryland and Quincy's 777; and the owners and operators of the electronic bingo machines, Multimedia Games, Inc., IGT, Cadillac Jack, Inc., Nova Gaming, LLC, and Bally Gaming, Inc. Plaintiffs originally filed this lawsuit in the Circuit Court of Macon County, Alabama. Subsequently, after the filing of the Amended Complaint, this lawsuit was removed here under the mass action, jurisdictional provision of the Class Action Fairness Act of 2005 ("CAFA"), *see* 28 U.S.C. §§ 1332(d)(11) and 1453. Plaintiffs filed a motion to remand this case back to state court (Doc. # 33), but the court denied that motion,

finding that removal was proper under CAFA (Doc. # 55). With the jurisdictional issue resolved, the court now addresses the fully briefed motions to dismiss, filed by Defendants IGT, Cadillac Jack, Inc., and Multimedia Games, Inc. (Docs. # 22, 27, 29.) After careful consideration of the arguments of counsel, the allegations of the Amended Complaint and the relevant law, the court finds that the motions to dismiss are due to be denied.

## I.  JURISDICTION AND VENUE

Removal jurisdiction is proper because CAFA's jurisdictional requirements are satisfied. *See* 28 U.S.C. § 1332(d)(11) (governing removals of mass actions, which are to be treated as class actions under § 1453); 28 U.S.C. § 1446(b) (governing removal procedures). Personal jurisdiction and venue are not contested, and there are adequate allegations of both.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.

2

2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (*Twombly* formally retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard." (citation omitted)).

### III.  BACKGROUND[1]

### A.  The Parties

At all times pertinent to this litigation, Defendant Macon County Greyhound Park ("MCGP") offered pay-to-play electronic bingo machines to the public at its facility in Macon County, Alabama, under the names Victoryland and Quincy's 777.[2] (Am. Compl. ¶¶ 2, 17.)  MCGP is an Alabama corporation, which "is owned, in whole or in part," by Milton McGregor ("McGregor").  (Am. Compl. ¶ 2.)  The remaining Defendants – IGT, Cadillac Jack, Inc., Multimedia Games, Inc., Nova Gaming, LLC, and Bally Gaming, Inc. – are alleged to "own[ ] and operate[ ]" the subject electronic bingo machines and are deemed citizens of states other than Alabama, to include Texas, Nevada, Georgia and South Carolina.  (Am. Compl. ¶¶ 3-7.)

The 816 Plaintiffs spent "millions of dollars" in wagers playing electronic bingo machines at Victoryland "during the past" six months.  (Am. Compl. ¶ 18; *see also*

---

[1] The factual and procedural history of this case is set out in the court's previous Memorandum Opinion and Order.  (*See* Mem. Op. & Order (Doc. # 55).)  For convenience, the background information is repeated here.  It should also be noted that two similar actions were filed in this court and are pending before the undersigned.  *See Adell v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv122 (M.D. Ala. filed Feb. 16, 2010); *Bussey v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv191 (M.D. Ala. filed Mar. 4, 2010).  In *Adell* and *Bussey*, as here, the plaintiffs allege that they lost money playing illegal electronic bingo machines at Victoryland, and sue to recover those losses under § 8-1-150 of the Alabama Code.  *Adell*, consisting of 853 plaintiffs, was filed as a proposed "mass action," while *Bussey* was filed as a proposed class action.  Defendants in this lawsuit also are sued in *Adell* and *Bussey*.

[2] For convenience, Victoryland and Quincy's 777 are referred to together as "Victoryland."

Am. Compl. ¶ 32.) All but two Plaintiffs are Alabama citizens,[3] and Plaintiffs allege that "each of their claims individually and aggregately exceed [sic] $10,000." (Am. Compl. ¶¶ 1, 10.)

## B. The Electronic Bingo Machines

The alleged illegality of Victoryland's electronic bingo machines under Alabama law is at the core of this action.[4] Electronic bingo commenced at Victoryland after the ratification in June 2004 of Amendment No. 744 to the Alabama Constitution. (Am. Compl. ¶ 12); *see also* Ala. Const. 1901 amend. No. 744. This constitutional amendment permits "[t]he operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes." Ala. Const. 1901 amend. No. 744. Plaintiffs contend that Amendment No. 744 does not "authorize the playing of 'bingo' through or with electronic devices as have been used" by Defendants at Victoryland. (Am. Compl. ¶ 13.) Because Victoryland's electronic bingo machines allegedly run afoul of Amendment No. 744, Plaintiffs aver

---

[3] The Amended Complaint alleges that all Plaintiffs are "resident citizens of Alabama." (Am. Compl. ¶ 1.) In their motion to remand, however, Plaintiffs acknowledged that two Plaintiffs are not citizens of Alabama. (Pls.' Mot. to Remand 3 (Doc. # 33).)

[4] *See, e.g.*, Am. Compl. ¶¶ 3-7 (Defendants "engage in the operation of illegal bingo games" and "operate[ ] certain illegal bingo devices."); Am. Compl. ¶ 19 (The "machines operated" by Defendants "are illegal electronic bingo devices."); Am. Compl. ¶ 27 (Defendants' electronic bingo machines are "in fact, 'slot machines' . . . which violate the criminal provisions of Alabama law."); Am. Compl. ¶ 29 (Defendants used "illegal machines and devices."); Am. Compl. ¶ 33 (Defendants' "electronic gaming operation" is an "illegal gambling operation under Alabama constitutional, statutory and common law.").

that the machines "are, in fact, 'slot machines' . . . which violate the criminal provisions of Alabama law, including but not limited to, §§ 13(a)-12-20(10) and 13(a)-12-27." (Am. Compl. ¶ 28.)  Plaintiffs further allege that, during the same time frame that they patronized Victoryland, the electronic bingo machines were rigged, from time to time, to ensure wins exceeding $1.6 million collectively for a former city of Birmingham mayor.  (Am. Compl. ¶¶ 35-43.)

**C.     This Lawsuit**

Seeking to recover gambling losses they incurred playing Defendants' alleged illegal electronic bingo machines, Plaintiffs originally filed this lawsuit in the Circuit Court of Macon County, Alabama, against MCGP.  While the action was pending in state court, Plaintiffs filed an Amended Complaint, adding as Defendants IGT, Cadillac Jack, Multimedia Games, Nova Gaming, and Bally Gaming, and also adding several new Plaintiffs.  The governing Amended Complaint contains one state law count.  In that count, Plaintiffs allege that they "entered into wagers" with Defendants, that those wagers were founded upon illegal gambling consideration and that, therefore, the contracts are void, pursuant to Alabama Code § 8-1-150. (Am. Compl. ¶ 51.) Plaintiffs "seek the recovery of monies paid to" Defendants "for wagers on improper and illegal bingo games conducted by [ ] Defendants at Victoryland." (Am. Compl. ¶ 52; *see also* Am. Compl., *ad damnum* clause ("demand[ing] judgment

against the Defendants for the recovery of the monies paid on all electronic bingo games played by the Plaintiffs plus interest and the costs of this matter").)

IGT timely removed this lawsuit to this court, predicating removal jurisdiction on the mass action, jurisdictional provision of CAFA. *See* 28 U.S.C. §§ 1332(d)(11) and 1453. Denying Plaintiffs' motion to remand, the court found that federal removal jurisdiction existed. (Mem. Op. & Order (Doc. # 55).) The analysis now turns to the three pending motions to dismiss, filed by IGT, Cadillac Jack, and Multimedia Games.[5] (Docs. # 22, 27, 29.)

## IV. DISCUSSION

Alabama has had in place for more than 150 years a statute prohibiting the enforcement of a contract giving rise to a gambling debt. *See* Ala. Code § 8-1-150. Section 8-1-150(a), which is titled, "Contracts founded upon gambling consideration void; recovery of money paid or things of value delivered," provides:

> All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

---

[5] To reiterate, this opinion is addressed only to Plaintiffs' § 8-1-150 claims asserted against IGT, Cadillac Jack and Multimedia Games.

*Id.* In 1905, the Supreme Court of Alabama explained that "[t]he object of the statute avoiding gaming contracts is, besides placing the seal of the law's condemnation on such contracts, to put the parties in *statu quo* as to all money won or lost." *Motlow v. Johnson*, 39 So. 710, 711 (Ala. 1905).

Relying upon Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Manufacturers attack the factual and legal adequacy of the Amended Complaint's allegations to allege a viable § 8-1-150 claim.[6] The arguments are addressed below.[7]

A. **<u>Alleged Factual Deficiencies</u>**

The Manufacturers argue that there are no specific factual allegations that Plaintiffs lost money by playing an electronic bingo machine supplied by any particular Manufacturer, that any Manufacturer received money lost by a Plaintiff on

---

[6] Collective references to "Manufacturers" encompass IGT, Cadillac Jack and Multimedia Games. In the Amended Complaint, Plaintiffs refer to IGT, Cadillac Jack and Multimedia Games as owners and operators of the electronic bingo machines. (Am. Compl. ¶¶ 3-5.) On the other hand, in a brief, Multimedia Games calls itself a "machine manufacturer." (*See, e.g.*, Multimedia Games' Br. 8 (Doc. # 30).) At this stage, there are only allegations, and the facts are not developed as to the business relationships among the various Defendants or as to the nature of IGT's, Cadillac Jack's, and Multimedia Games' activities in connection with the electronic bingo operations at Victoryland. Accordingly, in this opinion, IGT, Cadillac Jack and Multimedia Games are referred to collectively as "Manufacturers" for the sake of convenience and not as a term of legal significance.

[7] IGT, Cadillac Jack and Multimedia Games also are Defendants in *Adell v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv122 (M.D. Ala. filed Feb. 16, 2010), and *Bussey v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv191 (M.D. Ala. filed Mar. 4, 2010). *See supra* note 1. These three Defendants make some of the same arguments here that they made in *Adell* and *Bussey* when urging Rule 12(b)(6) dismissal. Those arguments are rejected here for substantially the same reasons they were found unpersuasive in *Adell* and *Bussey*. Hence, the court's analysis here, in many respects, mirrors that in *Adell* and *Bussey*.

one of its electronic machines, or that directly connect each Manufacturer with money lost by Plaintiffs.  (Cadillac Jack's Br. 19-20 (Doc. # 23); IGT's Br. 4 (Doc. # 28); Multimedia Games' Br. 9-10 (Doc. # 30).)  The Manufacturers assert that the Amended Complaint "present[s] a possible scenario" that Plaintiffs' losses occurred on an electronic bingo machine supplied by another Defendant (IGT's Br. 4), and that Plaintiffs improperly "lump[ ]" Defendants together (Multimedia Games' Br. 11). Absent allegations that "directly connect" the Manufacturers with any of Plaintiffs' alleged losses (IGT's Br. 4), Defendants contend that under *Twombly*, the facts pleaded are insufficient to "state a claim to relief that is plausible on its face." 550 U.S. at 570.

Although the Manufacturers' arguments are colorable, they are not persuasive at this juncture. The Amended Complaint pleads more than collective accusations. There are allegations that Plaintiffs paid money to play electronic bingo machines that were owned and operated by IGT, Cadillac Jack and Multimedia Games.[8]  (Am. Compl. ¶¶ 17-18 (listing manufacturers).)  There also are allegations that Plaintiffs entered into wagers with IGT, Cadillac Jack and Multimedia Games, that those wagers "were founded upon gambling consideration," and that the recovery of those lost

---

[8] IGT and Multimedia Games do not allege that their electronic bingo machines were not present and available for play at Victoryland during the relevant time period.  While Cadillac Jack makes that assertion, the assertion is contradicted by the allegations in the Amended Complaint, as discussed *infra*.

9

wagers are sought.  (*See* Am. Compl. ¶¶ 51, 52; *see also* Am. Compl. ¶ 10.)  Even if the facts fall at the lesser end of the descriptive continuum, the favorable inferences drawn from the allegations show wagers placed with each Manufacturer, money paid to each Manufacturer as wagers, and wagers lost.  The alternative explanation offered by each Manufacturer (*i.e.*, that the machine played was not "mine") is not so obvious and overwhelming as to render the claim no longer plausible.

Furthermore, dismissal is not appropriate based upon arguments that the Amended Complaint fails to specify the amount each Plaintiff lost to Defendants (IGT's Br. 3) and fails to "trace each Plaintiffs' losses to the Defendant that allegedly profited from the purported loss." (Multimedia Games' Br. 10-11 (citing, among other cases, *Funliner of Ala., L.L.C. v. Pickard*, 873 So. 2d 198 (Ala. 2003)).  These arguments step into the realm of proof, not pleading.  *Funliner* supports, rather than contradicts, this point.  *See* 873 So. 2d at 209 (finding class certification inappropriate and observing that under § 8-1-150, "in order *to recover* the plaintiffs must establish, on an individual basis, the amount they lost to the defendants" (emphasis added)); *see also Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995) ("A plaintiff is not required to itemize his damages claims in his complaint.").

Moreover, Plaintiffs contend that information pertaining to the specific amount of losses each Plaintiff incurred on a particular Manufacturer's machine is exclusively

within the Manufacturers' possession. (Pls.' Resp. to Mots. to Dismiss 5 (Doc. # 45).) This argument is not without some force. As this court has recognized, "[n]o plaintiff could be expected to allege facts of which only the defendants have knowledge and control." *Hollingsworth v. Edgar*, No. 2:04cv935-WKW, 2006 WL 2009104, at *7 (M.D. Ala. July 18, 2006); *cf. Endo v. Albertine*, 812 F. Supp. 1479, 1497 (N.D. Ill. 1993) (rejecting the argument that the complaint "impermissibly 'lump[ed]' the defendants together" and finding that to satisfy Rule 9(b), the "[p]laintiffs need not allege facts which are in the exclusive knowledge or control of the defendants").

For the foregoing reasons, the Amended Complaint contains enough facts to plead a plausible claim for relief under § 8-1-150. Dismissal is, therefore, not appropriate.

**B.     Alleged Legal Deficiencies**

Multimedia Games also contends that under Alabama law, no contract can exist "between Plaintiffs, who allege that they are casino patrons, and a machine manufacturer, such as [it]." (Multimedia Games' Br. 6.) Rather, Multimedia Games argues that it is well settled "that gambling contracts exist between only the patron and the casino." (Multimedia Games' Br. 7 (emphasis omitted).) Multimedia Games relies principally on *Macon County Greyhound Park, Inc. v. Knowles*, 39 So. 3d 100 (Ala. 2009), and *Knowles*'s observation that "the general rule is that '[c]asino-style

11

wagering is essentially an *adhesion* contract between the casino and its patrons,' that is, 'the casino defines the terms of the contract (the rules of the wager) and allows patrons to play the game as-is, with *no possibility of changing the rules*.'" *Id.* at 110 (quoting Anthony Cabot & Robert Hannum, *Advantage Play and Commercial Casinos*, 74 Miss. L.J. 681, 722 (2005)); (*see* Multimedia Games' Br. 7.)

In *Knowles*, the plaintiff brought a breach of contract claim against MCGP for its failure to pay her a multimillion dollar jackpot allegedly won playing an electronic bingo machine at Victoryland. 39 So. 3d at 106. The issue in *Knowles* was not who can and cannot be a party to a casino-style gaming contract. That issue was not explored. Nor was the alleged manufacturer of the electronic bingo machine even a defendant. *See id.* at 104, 106. Rather, the issue was whether the terms of a gambling contract between the sole Defendant, MCGP, and its patron encompassed the rules of the wager incorporated into the help screens and pay tables of the electronic bingo machine (as argued by MCGP), or only the sheriff's regulations (as argued by the plaintiff).[9] *See id.* at 106. In short, the court finds that Multimedia Games' reliance on *Knowles* for the contention that an electronic machine manufacturer *never* can be a party to a casino-style wagering contract as a matter of law is not persuasive.

---

[9] In *Knowles*, "the *parties agree[d]* that Amendment No. 744 remove[d] impediments to the enforceability of th[e] contract." 39 So. 3d at 107. Hence, the court "express[ed] no opinion as to whether Amendment No. 744 *actually does* authorize the type of activity here involved [*i.e.*, the play of electronic bingo machines at Victoryland]." *Id.* at 107 n.1.

(Multimedia Games' Br. 6.) Here, the Amended Complaint alleges gambling contracts between Plaintiffs and Multimedia Games, and Plaintiffs will be permitted to go forward at this juncture with their claim. Accordingly, Multimedia Games' argument does not warrant Rule 12(b)(6) dismissal of the § 8-1-150 claim at the Rule 12(b)(6) stage.

### C.    Cadillac Jack's Additional Argument

Cadillac Jack makes an additional argument. It contends that § 8-1-150(a)'s six-month period "runs from July 25, 2010 through January 25, 2011," the date the First Amended Complaint was filed (Cadillac Jack's Br. 3), and that Plaintiffs' claim against it is time barred because it removed all of its electronic bingo machines from Victoryland on or before July 6, 2010. *See* Ala. Code § 8-1-150(a) (permitting recovery of money lost upon a wager "by an action commenced within six months from the time of such payment or delivery"). Cadillac Jack submits an affidavit that supports its factual contention as to the timing of the removal of the machines. (*See* Mauro Franic Aff. ¶¶ 3-4 (Ex. A to Doc. # 23).) On the other hand, Plaintiffs calculate the six-month period differently based primarily upon principles of tolling and relation back, and further object to the court's consideration of the affidavit, asserting that without discovery they are "are unable to adequately respond to" this

evidence. (Pls.' Resp. to Mots. to Dismiss 6-7; *see generally* Pls.' Resp. to Mots. to Dismiss 7-10.)

The court cannot consider the affidavit, unless it construes the Rule 12(b)(6) motion to dismiss as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). Because discovery has not commenced, Plaintiffs have not had an adequate opportunity to challenge Mr. Franic's attestations. The court declines, therefore, to construe the Rule 12(b)(6) motion as one made pursuant to Rule 56. Accordingly, the *Iqbal/Twombly* standard applies here, and the court must accept as true all well pleaded factual allegations in the Amended Complaint. Assuming for purposes of argument only that the six-month period begins and ends on the dates posited by Cadillac Jack,[10] Plaintiffs sufficiently allege facts from which it can be inferred that, during the six months preceding the filing of the Amended Complaint, they played Cadillac Jack's electronic bingo machines. (Am. Compl. ¶¶ 9, 17, 18.) Because those facts must be accepted as true under Rule 12(b)(6), Cadillac Jack is not entitled to dismissal on its argument that none of its machines was housed at Victoryland during the relevant § 8-1-150(a) time period.

---

[10] Because Cadillac Jack's legal argument is tied to evidence outside the pleadings and because that evidence is not being considered at this juncture, it is unnecessary for purposes of resolving the pending motions to dismiss to reach a decision on the legal issues pertaining to the parameters of the six-month recovery period and the application (or not) of tolling and relation back principles.

## V.  CONCLUSION

Based upon the principles governing Rule 12(b)(6) motions to dismiss, no ground has been asserted that warrants dismissal of the Amended Complaint. Accordingly, it is ORDERED that the motions to dismiss (Docs. # 22, 27, 29), filed by IGT, Cadillac Jack and Multimedia Games are DENIED.

DONE this 10th day of November, 2011.

        /s/ W.  Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE